People v Nichols (2021 NY Slip Op 02842)





People v Nichols


2021 NY Slip Op 02842


Decided on May 6, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:May 6, 2021

110230
[*1]The People of the State of New York, Respondent,
v
Martin J. Nichols, Appellant.

Calendar Date:March 18, 2021

Before:Garry, P.J., Lynch, Clark, Aarons and Colangelo, JJ.

Rural Law Center of New York, Castleton (Kelly L. Egan of counsel), for appellant.
Karen A. Heggen, District Attorney, Ballston Spa (Gordon W. Eddy of counsel), for respondent.



Lynch, J.
Appeal from a judgment of the County Court of Saratoga County (Murphy III, J.), rendered October 16, 2017, convicting defendant upon his plea of guilty of the crime of criminal possession of a controlled substance in the third degree.
Following a traffic stop in Saratoga County on the evening of November 21, 2016, defendant was charged by indictment with criminal possession of a controlled substance in the third degree (two counts), tampering with physical evidence, obstructing governmental administration in the second degree, criminal possession of a weapon in the third degree, aggravated unlicensed operation of a motor vehicle in the third degree and possession of marihuana. Defendant moved to suppress the evidence recovered during the traffic stop and County Court denied the motion following a hearing. Defendant ultimately pleaded guilty to one count of criminal possession of a controlled substance in the third degree in satisfaction of the indictment and executed a written appeal waiver that "encompasse[d] all issues arising from th[e] criminal proceeding." He was sentenced, as a second felony offender and in accordance with the plea agreement, to a prison term of 9½ years, followed by three years of postrelease supervision. Defendant appeals.
Defendant seeks to vacate his plea on the ground that it was not knowing, intelligent and voluntary because County Court failed to advise him of all of his Boykin rights. Insofar as defendant did not file a postallocution motion to withdraw the plea despite an opportunity to do so, this issue is unpreserved for review (see People v Miller, 190 AD3d 1029, 1030 [2021]; People v Apelles, 185 AD3d 1298, 1299 [2020], lv denied 35 NY3d 1092 [2020]; People v Thompson-Goggins, 182 AD3d 916, 918 [2020]). The narrow exception to the preservation rule does not apply since defendant did not make any statements during the plea colloquy that were "inconsistent with his guilt, negated an essential element of the charged crime or otherwise called into question the voluntariness of his plea" (People v Gamble, 190 AD3d 1022, 1024 [2021], lv denied ___ NY3d ___ [Mar. 2, 2021]; see People v Williams, 27 NY3d 212, 214, 220-222 [2016]). Recognizing that his argument is unpreserved, defendant asks us to take corrective action in the interest of justice. We decline to do so. Here, County Court advised defendant during the plea proceeding that, by pleading guilty, he would be giving up his "right to a trial[,] . . . to cross-examine witnesses[, and] . . . to take the stand in [his] own defense." Although the court did not specify that defendant would be giving up his right to a jury trial or the privilege against self-incrimination (see People v Demkovich, 168 AD3d 1221, 1222 [2019]),[FN1] there is no cause to invalidate the plea under the circumstances presented (see People v Tyrell, 22 NY3d 359, 365 [2013]; People v Edwards, 181 AD3d 1054, 1056 [2020], lv denied 35 NY3d 1026 [2020]). When considering "all of the relevant [*2]circumstances surrounding [the] plea" (People v Conceicao, 26 NY3d 375, 382 [2015] [internal quotation marks and citations omitted]) — including defendant's prior criminal history, the active participation by counsel, and the timing of the plea — we are satisfied that it was knowingly, voluntarily and intelligently entered (see People v Edwards, 181 AD3d at 1056).
Defendant next contends that County Court erred in denying his suppression motion, a claim that survives his guilty plea (see People v Herbert, 147 AD3d 1208, 1209 [2017]). Although defendant executed a written appeal waiver — which generally forecloses a challenge to an adverse suppression ruling (see People v Andino, 185 AD3d 1218, 1219 [2020], lv denied 35 NY3d 1110 [2020]; People v Dobbs, 157 AD3d 1122, 1123 [2018], lv denied 31 NY3d 983 [2018]; People v Stone, 105 AD3d 1094, 1095 [2013]) — the People concede, and we agree, that the appeal waiver was overly broad (see People v Thomas, 34 NY3d 545, 556 [2019]; People v Gervasio, 190 AD3d 1190, 1191 [2021]). Moreover, County Court's brief and vague discussion of defendant's appellate rights during the oral colloquy does not excuse the overly-broad written waiver in these circumstances (see People v Gervasio, 190 AD3d at 1191). Accordingly, defendant's waiver of the right to appeal was invalid and his challenge to County Court's suppression ruling is reviewable.
Nevertheless, County Court did not err in declining to suppress the physical evidence obtained during the traffic stop. During the suppression hearing, State Trooper Kenneth M. Ahigian testified that, at approximately 10:30 p.m. on November 21, 2016, he was driving northbound on I-87 near the Town of Malta, Saratoga County. At that time, he observed a black SUV commit several traffic violations, including "moving from [the] lane in an unsafe manner, speeding, and not using a directional." State Trooper Michael P. Tromblee — who was sitting in his police vehicle in the U-turn lane — also observed the vehicle, explaining that a television appeared to be playing in the front middle console. Tromblee watched as Ahigian followed behind the vehicle and activated his emergency lights to initiate a traffic stop. Ahigian then called for backup on an internal radio and Tromblee followed behind Ahigian to assist.
Before approaching the vehicle, Ahigian ran its license plate number through an onboard database, which revealed that the driver's license for the registered owner was suspended. Ahigian then approached the vehicle, where he encountered defendant sitting in the driver seat and a woman sitting in the front passenger seat. Defendant rolled down his window and produced his license and registration. Defendant then complied with Ahigian's request to exit the vehicle and followed him to the rear, where Ahigian informed him that he smelled marihuana emanating from the vehicle. In response, defendant informed Ahigian that he had smoked marihuana earlier that evening and [*3]handed Ahigian marihuana that he had on his person. Ahigian testified that, at that point, defendant began trying to "reach in his pants" and tug on his waistband. Concerned for his safety, Ahigian placed defendant in handcuffs and conducted a "preliminary" search of defendant's person, which did not yield contraband.
Meanwhile, Tromblee sought pedigree information from the woman in the passenger seat. In response to Tromblee's inquiry about where she and defendant were coming from, the passenger stated that they were on their way back from a Walmart in the Town of Colonie, Albany County. The passenger referred to defendant as "Bam" but did not know his last name, stating that they had met online approximately three weeks prior. After speaking with the passenger, Tromblee and Ahigian met near the rear of the vehicle and consulted about the different information they had received from the occupants, noting that their stories "had some pretty significant variances." Ahigian told Tromblee that he was going to speak with the female passenger, advising Tromblee "to watch [defendant] closely" because he "was making a lot of movements trying to reach into his pant[s]." Tromblee began talking to defendant, who stated that he and the passenger were coming from the City of Troy, Rensselaer County and that they had been in a relationship for approximately six months. Tromblee testified that, during their encounter, defendant "began to . . . look[] over his shoulder, then kept turning back as . . . Ahigian was searching the vehicle." Tromblee testified that defendant then stated that he was "cold" and wanted to "sit in the vehicle." In response, Tromblee informed defendant that he would be subjected to another search if he wanted to sit in the vehicle because he "didn't want [defendant] leaving any presents." According to Tromblee, defendant stated that "he didn't need to be searched" again because he had already been searched by Ahigian. Tromblee replied that, if defendant was unwilling to be searched again, then "he wasn't going to be sitting in a vehicle." Defendant ultimately requested to sit in the vehicle and was escorted to the police car. Tromblee then searched defendant again, testifying that he felt a bulge inside of defendant's pants. Tromblee did not immediately retrieve the bulge, instead continuing with his search. Tromblee explained that, as he was jostling defendant's waistband, defendant "shifted from his right foot to both feet to his left foot, kicked his right foot out[,] and a baggy containing a powder came out of the right pant leg onto his foot." At that point, defendant appeared to "step his foot down on the bag or kick the bag" and a struggle ensued that ended with the powder — later identified as heroin — spilling on Tromblee's hands and shirt.
Defendant does not challenge the initial stop of his vehicle or the roadside search by Ahigian, which were in all respects lawful given the observation of traffic violations[*4], the odor of marihuana emanating from the vehicle and defendant's furtive movements toward his waist band (see Vehicle and Traffic Law §§ 1128, 1163, 1180; People v Blandford, 190 AD3d 1033, 1036 [2021]; People v Rasul, 121 AD3d 1413, 1415 [2014]; People v Isaac, 107 AD3d 1055, 1057 [2013]). Rather, he contends that Tromblee's search of his person was impermissible because he was not under arrest at the time and Ahigian had already performed a search that did not yield any contraband. We are unpersuaded. Defendant consented to the search by Tromblee under circumstances that were free from "[o]fficial [police] coercion" when he confirmed that he wanted to sit in the vehicle after being informed that his request to do so would only be entertained upon a second search of his person (People v Gonzalez, 39 NY2d 122, 127 [1976]; see People v Miller, 159 AD3d 1053, 1054-1055 [2018]). Finally, defendant's contention that Tromblee "intentionally manipulated [his] clothing to dislodge [the] bulge that was inside of [his] pants leg" is not supported by the testimony.
Garry, P.J., Clark, Aarons and Colangelo, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: We note that County Court advised defendant of his right to a jury trial during the arraignment on the indictment and, during the plea colloquy, stated that his guilty plea would "incriminate [him]."