People v Winters (2021 NY Slip Op 04257)





People v Winters


2021 NY Slip Op 04257


Decided on July 8, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:July 8, 2021

109879B
[*1]The People of the State of New York, Respondent,
v
Barkim Winters, Also Known as Black, Appellant.

Calendar Date:June 2, 2021

Before:Lynch, J.P., Clark, Aarons, Reynolds Fitzgerald and Colangelo, JJ.

Clea Weiss, Ithaca, for appellant.
Robert M. Carney, District Attorney, Schenectady (Peter H. Willis of counsel), for respondent.



Reynolds Fitzgerald, J.
Appeal from a judgment of the County Court of Schenectady County (Sypniewski, J.), rendered September 6, 2017, convicting defendant upon his plea of guilty of the crime of criminal sale of a controlled substance in the third degree.
In November 2016, detectives with the City of Schenectady Police Department conducted two controlled buys in which a confidential informant (hereinafter the CI) purchased cocaine from defendant, whose nickname is Black. Defendant was charged by indictment with two counts of criminal sale of a controlled substance in the third degree and two counts of criminal possession of a controlled substance in the third degree. Prior to trial, defendant moved to suppress the CI's identification of him from a photo array. After a Wade hearing, conducted before a Judicial Hearing Officer, County Court adopted the Judicial Hearing Officer's recommendation and report and denied defendant's motion to suppress. Defendant thereafter pleaded guilty to one count of criminal sale of a controlled substance in the third degree. As part of his plea agreement, defendant was required to waive his right to appeal. Defendant was thereafter sentenced to a prison term of 3½ years, followed by two years of postrelease supervision. Defendant appeals.
Defendant contends that his appeal waiver was overbroad and, as such, he did not knowingly, intelligently and voluntarily waive his right to appeal. "A waiver of the right to appeal is effective only so long as the record demonstrates that it was made knowingly, intelligently and voluntarily" (People v Lopez, 6 NY3d 248, 256 [2006] [citation omitted]). "[A] trial court must review the waiver and determine whether it meets those requirements by considering all the relevant facts and circumstances surrounding the waiver" (People v Sanders, 25 NY3d 337, 340 [2015] [internal quotation marks, brackets and citations omitted]). During the plea colloquy, "County Court failed to make clear to defendant that the appeal waiver was not a total bar to defendant taking an appeal, nor did the court adequately ensure that defendant understood the contents or ramifications of the waiver" (People v Aponte, 190 AD3d 1031, 1032 [2021] [citations omitted], lvs denied ___ NY3d ___ [May 12, 2021]). Further, the record confirms that the written appeal waiver was overbroad in that it advised defendant that he was waiving "all matters relating to the conviction and sentence to the fullest extent that they may lawfully be waived" and that he was also waiving his right to appeal "any [c]ourt opinions, decisions and suppression hearing and other rulings that have been made in connection with [his] case(s)." Additionally, the written waiver informed defendant that he was waiving his right to appeal "from any other matters . . . in any [s]tate or [f]ederal [c]ourt, or that [he] may collaterally attack pursuant to [CPL articles] 330 or 440, or through [w]rits of [c]orum [n]obis or [h]abeas [c]orpus, or any other manner, [*2]in any [s]tate or [f]ederal court." Therefore, we find that defendant did not knowingly, intelligently and voluntarily waive his right to appeal (see People v Figueroa, 192 AD3d 1269, 1270 [2021]; People v Anderson, 184 AD3d 1020, 1021 [2020], lvs denied 35 NY3d 1064, 1068 [2020]). As such, defendant's challenges to his suppression ruling and sentence are properly before us (see People v Nichols, 194 AD3d 1114, 1116 [2021]; People v Justiniano, 134 AD3d 1172, 1173-1174 [2015]).
Turning to the merits, defendant contends that County Court improperly denied his motion to suppress the photo array identification as unduly suggestive, since the array listed defendant's legal name on the bottom of the array. "Unduly suggestive pretrial identification procedures violate due process and therefore are not admissible to determine the guilt or innocence of an accused" (People v Chipp, 75 NY2d 327, 335 [1990] [citations omitted], cert denied 498 US 833 [1990]). "While it is not required that the individuals in a photo array be nearly identical to the defendant, their characteristics must be sufficiently similar to those of the defendant, so as to not create a substantial likelihood that the defendant would be singled out for identification" (People v Marryshow, 162 AD3d 1313, 1313 [2018] [internal quotation marks and citations omitted]).
At the Wade hearing, a detective with the Schenectady Police Department testified as to the photo array identification process he utilized with the CI. The detective testified that he and the CI were the only ones in the room, that he read the standard form instructions to the CI, then gave the CI a closed manila folder containing the photo array. The CI opened the folder and, within approximately 5 to 10 seconds, stated, "[T]hat's Black" and pointed to defendant's photograph. Thereafter, the CI circled defendant's photograph and wrote his CI identification number in the circle. The CI never changed his answer or indicated any doubt as to defendant's identification. The detective further testified that he did not make any statements or gestures toward any particular photograph, nor did he make any threats or promises to the CI. However, the detective testified that when he initially received the folder containing the photo array from another officer, he did not open it and review the array before showing it to the CI. When the CI opened the folder, the detective noticed that the legal names of the subjects — including defendant's name — were located at the bottom of the array. The detective further testified that, although it is unusual for the subjects' names to be included in the photo array, neither he nor the CI ever used defendant's legal name, nor had the detective ever heard any other officers refer to defendant by his name in the presence of the CI.
Another detective with the Schenectady Police Department testified that he managed the CI, including the controlled buy that occurred in November 2016, and [*3]that he initially asked the CI if he knew defendant by any name other than Black, and the CI stated that he only knew him as Black. The detective further testified that he never showed the CI any paperwork that had defendant's name on it and never used any name other than Black when referring to defendant, nor had he heard any other officers use defendant's name in any conversations with the CI. Lastly, the detective testified that he created the photo array through the use of a computer program, that he generated two identical photo arrays with the exception that one contained the subjects' names on the bottom of the array, and that he accidentally placed that array in the manila folder.
Although the inclusion of defendant's name on the photo array was atypical, it did not present a serious risk of influencing the CI's identification of defendant since the CI did not know defendant's name and only knew him by his nickname (compare People v Smith, 140 AD2d 647 648 [1988], lv denied 72 NY2d 961 [1988]). Based on the totality of the circumstances, and the similarities between defendant and the other men in the photo array, we find the inclusion of defendant's name did not render the photo array unduly suggestive (see People v Chamberlain, 96 AD2d 959, 960 [1983]).
Lastly, defendant contends that his sentence is harsh and excessive since he is a first-time felony offender battling addiction. "A sentence that falls within the permissible statutory range will not be disturbed unless it can be shown that the sentencing court abused its discretion or extraordinary circumstances exist warranting a modification" (People v Cancer, 185 AD3d 1353, 1354 [2020] [internal quotation marks and citations omitted]; see People v Westmoreland, 164 AD3d 1550, 1550 [2018]). "[A]lthough defendant has been released from prison, [he] is nonetheless on parole and [his] appeal is therefore not moot" (People v Hastings, 24 AD3d 954, 956 n [2005]; People v Stewart, 185 AD2d 381, 382 [1992], lv denied 80 NY2d 977 [1992]). The sentence imposed was in accordance with defendant's plea agreement and within the permissible statutory range. County Court properly considered, as relevant sentencing factors, defendant's criminal record and his history of drug abuse (see People v Gilmore, 177 AD3d 1029, 1029-1030 [2019], lvs denied 35 NY3d 970 [2020]; People v Westmoreland, 164 AD3d at 1550). We discern no extraordinary circumstances or abuse of discretion that would warrant a reduction in his period of postrelease supervision in the interest of justice (see People v Cooney, 290 AD2d 727, 728 [2002], lv denied 97 NY2d 752 [2002]; People v Yekel, 288 AD2d 762, 763 [2001]).
Lynch, J.P., Clark, Aarons and Colangelo, JJ., concur.
ORDERED that the judgment is affirmed.