People v Dowling (2022 NY Slip Op 04324)

People v Dowling

2022 NY Slip Op 04324

Decided on July 7, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:July 7, 2022

110709
[*1]The People of the State of New York, Respondent,
v
Elisha Dowling, Appellant.

Calendar Date:May 25, 2022

Before:Egan Jr., J.P., Clark, Aarons, Fisher and McShan, JJ.

Adam G. Parisi, Schenectady, for appellant.
P. David Soares, District Attorney, Albany (Jonathan P. Catania of counsel), for respondent.

Fisher, J.
Appeal from a judgment of the Supreme Court (McDonough, J.), rendered November 17, 2017 in Albany County, upon a verdict convicting defendant of the crimes of attempted murder in the second degree, attempted assault in the first degree and criminal possession of a weapon in the second degree.
On September 24, 2016, the victim was shot at a bar in the City of Albany. The bouncer at the bar identified defendant as the shooter and defendant was subsequently charged with attempted murder in the second degree, attempted assault in the first degree and criminal possession of a weapon in the second degree. Before trial, defendant unsuccessfully moved to suppress the bouncer's identification of him, alleging that the photo arrays shown to the bouncer were suggestive. At trial, the victim did not testify and Supreme Court denied defendant's request for a missing witness charge. Defendant was found guilty as charged and was sentenced to a prison term of 20 years, to be followed by five years of postrelease supervision, for his conviction of attempted murder in the first degree and to lesser concurrent sentences on the remaining convictions. Defendant appeals.
Initially, we reject defendant's contention that the bouncer should not have been permitted to identify him at trial as the shooter because the bouncer's in-court identification was the product of an unduly suggestive photo array.[FN1] "A photo array is unduly suggestive if some feature or characteristic of one of the depicted individuals or photographs is so unique or distinctive that it draws the viewer's attention to that photograph, thereby indicating that the police have selected that particular individual" (People v Linear, 200 AD3d 1498, 1499 [2021] [internal quotation marks and citations omitted], lvs denied 38 NY3d 951, 952 [2022]; see People v Quintana, 159 AD3d 1122, 1126 [2018], lv denied 31 NY3d 1086 [2018]; People v Smith, 122 AD3d 1162, 1163 [2014]). While the individuals depicted in a photo array do not need to "be nearly identical to the defendant, their characteristics must be sufficiently similar to those of the defendant, so as not to create a substantial likelihood that the defendant would be singled out for identification" (People v Marryshow, 162 AD3d 1313, 1313-1314 [2018] [internal quotation marks and citations omitted]; accord People v Winters, 196 AD3d 847, 849 [2021], lvs denied 37 NY3d 1025, 1030 [2021]). "The People bear the initial burden of establishing the reasonableness of police conduct and the absence of any undue suggestiveness; however, the defendant has the ultimate burden of proving that the pretrial identification procedure was unduly suggestive" (People v Marryshow, 162 AD3d at 1314 [citations omitted]; see People v Quintana, 159 AD3d at 1126; People v Smith, 122 AD3d at 1163). Upon review, the findings of the suppression court "are entitled to great weight" (People v Hawkins, 167 AD3d 1071, 1073 [2018]; see People v Ackerman, 173 AD3d 1346, 1351 [2019[*2]], lv denied 34 NY3d 949 [2019]).
Our review of the photo arrays reveals that they were not unduly suggestive. Each of the two photo arrays contain the same six photographs in a different order. The photo arrays depict six males who all appear to be the same general age with similar facial features and skin tones. While defendant argues that his skin tone was lighter than that of the other men depicted, it was not distinctive, and his skin tone was approximately the same as at least one other man. Defendant's hair and facial hair are also similar to that of the men in the other photographs. Finally, defendant argues that the photo arrays are suggestive because he is wearing a red T-shirt while the other men are wearing white or black shirts. However, defendant's T-shirt is nondescript and muted in color, and the photographs are cropped such that the shirts are only partially visible and not a focus of the photographs. Accordingly, we are satisfied that the photo arrays were not unduly suggestive (see People v Serrano, 173 AD3d 1484, 1487 [2019], lvs denied 34 NY3d 937, 939 [2019]; People v Hawkins, 167 AD3d at 1073; People v Marryshow, 162 AD3d at 1314-1315; People v Quintana, 159 AD3d at 1127; People v Smith, 157 AD3d 978, 979 [2018], lvs denied 31 NY3d 1087 [2018]).
Defendant next contends that Supreme Court erred in declining to give a missing witness charge concerning the victim. To establish the need for a missing witness instruction, the proponent of the charge must show that "(1) the witness's knowledge is material to the trial; (2) the witness is expected to give noncumulative testimony; (3) the witness is under the control of the party against whom the charge is sought, so that the witness would be expected to testify in that party's favor; and (4) the witness is available to that party" (People v Lafountain, 200 AD3d 1211, 1215 [2021] [internal quotation marks and citations omitted], lv denied 38 NY3d 951 [2022]; see People v Smith, 33 NY3d 454, 458-459 [2019]; People v Ferguson, 193 AD3d 1253, 1258 [2021], lv denied 37 NY3d 964 [2021]). Once the proponent has done so, the burden shifts to the opposing party to demonstrate the absence of any of these elements (see People v Gonzalez, 68 NY2d 424, 428 [1986]; see also People v Smith, 33 NY3d at 458-459; People v Ferguson, 193 AD3d at 1259).
It is uncontroverted that the victim possessed material knowledge and defendant established that the victim would give noncumulative testimony.[FN2] Defendant also established that the victim, who at the time of trial was being housed in the Albany County Jail, was available to the People and would be expected to testify favorably to the People (see People v Onyia, 70 AD3d 1202, 1205 [2010]). Accordingly, defendant made out a prima facie showing to warrant a missing witness charge and the burden shifted to the People to establish why such charge would not be appropriate. To this end, the People failed to demonstrate that the victim was not [*3]available to them. The People acknowledged that they knew the victim was being housed in the Albany County Jail but made no attempts to produce or subpoena him (compare People v Coleman, 151 AD3d 1385, 1388 [2017], lv denied 29 NY3d 1125 [2017]; People v Womack, 143 AD3d 1171, 1174 [2016], lv denied 28 NY3d 1151 [2017]). The People also did not demonstrate that, even had they done so, the victim would have been unavailable for some other reason, such as by invoking a privilege (compare People v Macana, 84 NY2d 173, 177-180 [1994]; People v Narducci, 177 AD3d 511, 513 [2019], lv denied 34 NY3d 1080 [2019]).
However, the People established that the victim was not under their control. Control "is a separate and distinct consideration from availability" in that it "does not concern physical availability but rather the relationship between the witness and the parties based on their legal status or on the facts, such that it would be reasonable to expect one party to have called the witness to testify in his or her favor" (People v Onyia, 70 AD3d at 1205 [internal quotation marks and citation omitted]; see People v Martinez, 166 AD3d 1292, 1296-1297 [2018], lv denied 32 NY3d 1207 [2019]; People v Turner, 73 AD3d 1282, 1284 [2010], lv denied 15 NY3d 896 [2010]; see generally People v Savinon, 100 NY2d 192, 197-201 [2003]). The People demonstrated that the victim was wholly uncooperative during the course of the investigation. The victim would not let a detective photograph his injuries and refused to talk to the police on the day of the shooting. The victim also refused to speak to a different detective the next day and refused to consent to an interview a few weeks after. Although law enforcement did not attempt contact with the victim again in relation to this investigation, the People indicated that they had spoken numerous times to the victim's counsel who had clearly conveyed that the victim would not cooperate, and the People acknowledged during their opening statement that they did not expect the victim to testify. At the charge conference, defense counsel confirmed that he had also spoken to the victim's counsel and had been told the same. Therefore, we find that the People demonstrated that the victim was not under their control such that he would have been expected to testify favorably to them. Accordingly, Supreme Court did not err in declining to give a missing witness charge (see People v Cruz, 195 AD3d 637, 638 [2021], lv denied 37 NY3d 991 [2021]; People v Banks, 181 AD3d 973, 975-976 [2020], lv denied 35 NY3d 1025 [2020]; People v Osorio, 179 AD3d 1512, 1513-1514 [2020], lv denied 35 NY3d 972 [2020]; People v Burton, 126 AD3d 1324, 1326 [2015], lv denied 25 NY3d 1199 [2015]).
Egan Jr., J.P., Clark, Aarons and McShan, JJ., concur.
ORDERED that the judgment is affirmed.

Footnotes

Footnote 1: We note that the bouncer appeared to have a preexisting relationship with defendant. The video admitted into evidence shows the bouncer and defendant hugging, shaking hands and otherwise demonstrating that they knew each other. This was corroborated by the bouncer's testimony that he knew defendant and knew defendant's nickname.

Footnote 2: Although the People argued at oral argument that the victim's testimony would have been cumulative, such argument is not properly before this Court as the People did not raise it in their brief.