THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TERRANCE PETERSON, Also Known as TERRENCE PETERSON, Appellant. [988 NYS2d 271]—

Peters, P.J. Appeal from a judgment of the County Court of Ulster County (Williams, J.), rendered November 16, 2012, upon a verdict convicting defendant of the crimes of burglary in the second degree, strangulation in the second degree, assault in the third degree, aggravated criminal contempt and criminal contempt in the first degree (two counts).

Defendant and the victim had previously been involved in an

intimate relationship occasioned by incidents of physical violence. On November 29, 2011, defendant arrived at the apartment of the victim, who had obtained an order of protection against him, and proceeded to choke her and strike her repeatedly in the face and body with his fist. He was thereafter charged with various crimes stemming from the attack and, following a jury trial, was convicted of burglary in the second degree, strangulation in the second degree, assault in the third degree, aggravated criminal contempt and two counts of criminal contempt in the first degree. County Court sentenced him to an aggregate prison term of 15 years to be followed by five years of postrelease supervision. Defendant appeals.

Defendant first challenges the legal sufficiency and weight of the evidence supporting his conviction for burglary in the second degree, specifically arguing that the People failed to establish that he intended to commit a crime upon entering the victim's home. "In burglary cases, the defendant's intent to commit a crime within the premises may be inferred beyond a reasonable doubt from the circumstances of the entry" (*People v Beaty*, 89 AD3d 1414, 1416 [2011], *affd* 22 NY3d 918 [2013] [internal quotation marks and citation omitted]; *see People v Perry*, 95 AD3d 1444, 1445 [2012], *lv denied* 19 NY3d 1000 [2012]; *People v Rodriguez*, 68 AD3d 1351, 1352 [2009], *lv denied* 14 NY3d 804 [2010]).

The trial evidence established that, despite the order of protection then in effect, defendant and the victim shared Thanksgiving dinner together five days before this incident and spent at least one night together at the victim's residence during that week. Upon returning home from work on the evening of November 29, 2011, the victim received a message from defendant indicating that he would be coming over to retrieve certain belongings he had left there. She then gathered the items that defendant had left, put them on the counter and floor of her kitchen and went out into the foyer of the apartment building to wait for defendant. According to the victim, defendant came through the front door of her apartment building minutes later with a "red angry face" and, with "force and quickness," put his hands around her throat, told her to "get in that F'ing bedroom" and pushed her into her apartment. He punched her in the face—causing her to see "stars"—and when she "came to" she was on the fireplace with defendant pulling her toward the bedroom. After trying unsuccessfully to pull the victim up by her hair, defendant then bent down and delivered a number of punches to her stomach. As defendant left the room to get her ice, the victim managed to run out into the

street and flag down a motorist, who took her to a hospital for treatment.

Defendant did not deny assaulting the victim, but claimed that she had initiated contact with him on that day and invited him over for dinner. He stated that, upon arriving at the victim's residence, she greeted him on the porch and they walked inside the building and into her apartment together. Defendant testified that the victim then began talking about "set[ting] some rules," which ignited an argument. According to defendant, the victim slapped and scratched him, to which he admittedly responded by punching her in the face "five or six times"—"in the jaw, both her eyes [and] in the head."

The victim's description of the violent and unauthorized manner of defendant's entry, his actions once inside the apartment and the evidence of his prior abusive conduct towards her enabled the jury to reasonably infer that he intended to commit a crime upon entering the victim's home (*see People v Bibbes*, 98 AD3d 1267, 1268-1269 [2012], *lv denied* 20 NY3d 931 [2012]; *People v Cajigas*, 82 AD3d 544, 545 [2011], *affd* 19 NY3d 697 [2012]; *People v Massey*, 45 AD3d 1044, 1046 [2007], *lv denied* 9 NY3d 1036 [2008]; *see also People v Lewis*, 5 NY3d 546, 552 [2005]). While defendant points to various inconsistencies in the victim's testimony, these were fully explored on cross-examination and presented for the jury's consideration, and we find nothing inherently unbelievable or incredible about her account of the incident (*see People v McCray*, 102 AD3d 1000, 1003-1004 [2013], *affd* 23 NY3d 193 [2014]; *People v Mateo*, 101 AD3d 1458, 1459 [2012], *lv denied* 21 NY3d 913 [2013]). Further, although a different verdict would not have been unreasonable in light of defendant's testimony, after considering the evidence in a neutral light and according due deference to the jury's credibility determinations, we conclude that the verdict on the burglary count is not against the weight of the evidence (*see People v Danielson*, 9 NY3d 342, 349 [2007]; *People v Bleakley*, 69 NY2d 490, 495 [1987]).

We reach a similar conclusion with respect to defendant's convictions for strangulation in the second degree and aggravated criminal contempt. To convict defendant of strangulation in the second degree, the People were required to prove that he applied pressure to the throat or neck of the victim with the intent to impede her normal breathing or circulation of blood, and thereby caused her to suffer stupor or loss of consciousness for any period of time, or any other physical injury or impairment (*see* Penal Law §§ 121.11, 121.12; *People v Carte*, 113 AD3d 191, 193 [2013]). To prove that defendant com-

mitted the crime of aggravated criminal contempt, the People were required to establish that, in violation of the order of protection in favor of the victim, defendant intentionally or recklessly caused physical injury to her (*see* Penal Law § 215.52 [1]).

According to the victim, after defendant came through the front door of her building, he immediately put his hands around her throat, applied pressure, and continued to do so as he pushed her into her apartment. The victim explained that, when defendant's hands were around her neck, she felt "out of sorts" and at a loss for air, and last recalled seeing stars before she "came to" and found herself on the floor. Upon her arrival at a hospital emergency room, a nurse observed "linear markings" on the victim's neck and noted this finding in her medical records, along with the victim's statement that she "was strangled." The evidence established that the victim suffered from multiple abrasions and contusions, and her face was so swollen that she could not open her eyes. The nurse testified that the victim reported a loss of consciousness and had hemorrhaging in one of her eyes, which is a sign of strangulation. A friend of the victim who was present at the hospital emergency room shortly after the attack described the victim's face as "very disfigured" and testified that her throat was bluish and swollen and appeared to have fingerprint marks on it. Such observations were confirmed by photographs taken at the hospital by the investigating officer. Both this officer and the victim's friend stated that the victim had difficulty talking while at the hospital, and the victim testified that her throat felt raspy and sore the day after the assault and that she was expelling blood and phlegm for over seven days. Ultimately diagnosed with multiple contusions and a chest injury due to blunt trauma, the victim was prescribed anti-inflammatory and pain medication.

Given this evidence, there is "a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime[s] proved beyond a reasonable doubt" (*People v Danielson*, 9 NY3d at 349 [internal quotation marks and citations omitted]; *accord People v Brown*, 17 NY3d 863, 865 [2011]). Defendant's intent to interfere with the victim's breathing can be inferred from his conduct in grasping the victim's neck and thereafter maintaining his grip around her throat as he pushed the victim into the apartment (*see People v Carte*, 113 AD3d at 195; *see also Matter of Jesse Z.*, 116 AD3d 1105, 1106 [2014]; *see generally People v Johnson*, 107 AD3d 1161, 1163 [2013], *lv denied* 21 NY3d 1075 [2013]). Fur-

ther, considering the factors relevant to determining whether physical injury has been established (*see* Penal Law § 10.00 [9]; *People v Chiddick*, 8 NY3d 445, 447 [2007]; *People v Carte*, 113 AD3d at 193-194), we find legally sufficient evidence for the jury to conclude that the victim suffered more than "slight or trivial pain" as a result of such conduct (*People v Boyd*, 97 AD3d 898, 899 [2012] [internal quotation marks and citation omitted], *lv denied* 20 NY3d 1009 [2013]; *see People v Carte*, 113 AD3d at 193-194; *People v Jones*, 79 AD3d 1244, 1245-1246 [2010], *lv denied* 16 NY3d 832 [2011]; *People v Stearns*, 72 AD3d 1214, 1216-1217 [2010], *lv denied* 15 NY3d 778 [2010]). While defendant denied touching the victim's neck during the assault, we defer to the jury's resolution of this credibility issue. Upon the exercise of our factual review power, we likewise conclude that the guilty verdict on these counts is in accord with the weight of the evidence.

We are similarly unpersuaded by defendant's assertion that County Court erred in refusing to charge the jury with assault in the third degree as a lesser included offense of strangulation in the second degree. Comparing the statutory definitions of the two crimes in the abstract (*see People v Davis*, 14 NY3d 20, 23 [2009]; *People v Glover*, 57 NY2d 61, 63-64 [1982]), it is theoretically possible to commit second degree strangulation without also, by the same conduct, committing third degree assault. As relevant here, a person commits the crime of assault in the third degree when, with the intent to cause physical injury to another, he or she causes such physical injury (*see* Penal Law § 120.00 [1]). To commit strangulation in the second degree, however, there need not be an intent to cause physical injury, nor any physical injury caused (*see* Penal Law §§ 121.11, 121.12). A person can intend to impede another's normal breathing only as a method of asserting power and control over that person, without intending to cause physical injury (*see* William C. Donnino, Practice Commentary, McKinney's Cons Laws of NY, Book 39, Penal Law § 121.11, 2014 Pocket Part at 41-42). Furthermore, application of pressure to another's neck could cause stupor or loss of consciousness, but not physical injury. Thus, assault in the third degree under Penal Law § 120.00 (1) is not a lesser included offense of strangulation in the second degree.

Defendant correctly asserts that the prosecutor's question as to whether he had previously been convicted of criminal contempt in the second degree was a direct violation of County Court's *Sandoval* ruling. Such ruling limited the People's inquiry to whether defendant "committed a crime and violated an

order of [t]he [c]ourt" on a certain date, without speaking of the facts of the crime or the nature of the order. Defendant was not, however, deprived of a fair trial as a result of the violation, as any prejudice that might have arisen was alleviated when the court struck the question and answer from the record and delivered prompt curative instructions to the jury (*see People v Santiago*, 52 NY2d 865, 866 [1981]; *People v Thompson*, 67 AD3d 519, 519 [2009], *lv denied* 14 NY3d 806 [2010]; *People v Robles*, 28 AD3d 233, 233 [2006], *lv denied* 7 NY3d 817 [2006]; *compare People v Wright*, 260 AD2d 935, 937 [1999]). When the prosecutor then properly proceeded to ask defendant whether, in January 2012, he had "violated an order of the [c]ourt and [was] subsequently convicted," defendant responded that he did not remember and repeatedly asked, "What crime are you talking about?" As his responses challenged the People to specifically identify his conviction, defendant opened the door to further inquiry into such conviction (*see People v Fardan*, 82 NY2d 638, 646 [1993]; *People v Alicea*, 276 AD2d 915, 916 [2000], *lv denied* 96 NY2d 780 [2001]; *People v Marsh*, 248 AD2d 743, 744-745 [1998], *lv denied* 92 NY2d 856 [1998]; *compare People v Moore*, 92 NY2d 823, 824-825 [1998]). Accordingly, County Court did not err in modifying its *Sandoval* ruling so as to allow such inquiry.

Finally, considering defendant's disregard of the order of protection, the violent nature of the crimes he perpetrated upon the victim and his extensive criminal history—which includes 17 convictions spanning four decades, eight separate jurisdictions and three different states—we find that County Court acted well within its discretion in imposing concurrent maximum sentences on the top two counts, and we discern no extraordinary circumstances warranting a modification thereof (*see People v Lawing*, 110 AD3d 1354, 1356 [2013], *lv denied* 22 NY3d 1200 [2014]; *People v Phelan*, 82 AD3d 1279, 1283 [2011], *lv denied* 17 NY3d 799 [2011]; *People v Clark*, 65 AD3d 755, 759 [2009], *lv denied* 13 NY3d 906 [2009]). Contrary to defendant's contention, County Court's comments at sentencing were not indicative of a "personal hatred" of him, but rather "merely reflect the fact that the court was taking into consideration the nature of the crime[s], a legitimate factor in determining an appropriate sentence" (*People v Anderson*, 287 AD2d 574, 574 [2001], *lv denied* 97 NY2d 701 [2002] [internal quotation marks and citation omitted]; *see People v Vaughan*, 48 AD3d 1069, 1071 [2008], *lv denied* 10 NY3d 845 [2008], *cert denied* 555 US 910 [2008]; *see also People v Pimentel*, 108 AD3d 861, 863-864 [2013], *lv denied* 21 NY3d 1076 [2013]; *People v Cintron*, 12 AD3d 455, 456 [2004], *lv denied* 4 NY3d 742 [2004]). We must,

however, vacate the sentence reflected in the sentencing minutes for obstructing breathing and blood circulation causing physical injury, as defendant was neither tried for nor convicted of that offense (*see People v Campbell*, 37 AD3d 486, 486 [2007], *lv denied* 8 NY3d 944 [2007]; *People v Daniels*, 237 AD2d 529, 530 [1997], *lv denied* 90 NY2d 1010 [1997]).

Defendant's remaining contention—that a missing witness charge should have been issued as to the victim's neighbor—is unpreserved (*see* CPL 470.05 [2]; *People v Williams*, 62 NY2d 765, 767 [1984]; *People v Jones*, 79 AD3d at 1247).

Stein, McCarthy and Egan Jr., JJ., concur. Ordered that the judgment is modified, on the law, by vacating the sentence imposed for the crime of obstructing breathing and blood circulation causing physical injury, and, as so modified, affirmed.