*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  June 18, 2015                    105506
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                        Respondent,

        v                                       MEMORANDUM AND ORDER

EDMUND PETER HAARDT,
                        Appellant.
_____


Calendar Date:  April 24, 2015

Before:  Peters, P.J., Garry, Egan Jr. and Lynch, JJ.

                         _____


        Allen E. Stone Jr., Vestal, for appellant.

        Kirk O. Martin, District Attorney, Owego (Palmer J. Pelella
of counsel), for respondent.

                         _____


Egan Jr., J.

        Appeal from a judgment of the County Court of Tioga County
(Sgueglia, J.), rendered April 6, 2012, upon a verdict convicting
defendant of the crimes of strangulation in the second degree,
assault in the third degree and unlawful imprisonment in the
second degree.

        Defendant was charged in a three-count indictment with
strangulation in the second degree, assault in the third degree
and unlawful imprisonment in the second degree.  The charges
stemmed from a June 2011 altercation between defendant and his
then girlfriend.  Following a jury trial, at which both the
victim and defendant appeared and testified, the jury found
defendant guilty of all charges.  Defendant's subsequent motion
to set aside the jury's verdict was denied, and County Court

thereafter sentenced defendant to four years in prison followed by three years of postrelease supervision on the strangulation charge and to time served on the remaining charges. Defendant now appeals.

We affirm. Initially, to the extent that defendant contends that County Court erred in denying his challenge for cause with respect to a prospective juror, we need note only that the individual in question was a prospective alternate juror. As no alternate jurors participated in deliberations, defendant's argument on this point is moot (see People v Rivera, 7 AD3d 358, 359 [2004], lv denied 3 NY3d 741 [2004]; People v White, 297 AD2d 587, 588 [2002], lv denied 99 NY2d 565 [2002]; People v Crockett, 262 AD2d 205, 205 [1999]).

Turning to defendant's challenge to the legal sufficiency and weight of the evidence, "[a] person is guilty of strangulation in the second degree when he or she commits the crime of criminal obstruction of breathing or blood circulation . . . and thereby causes stupor, loss of consciousness for any period of time, or any other physical injury or impairment" (Penal Law § 121.12). Insofar as is relevant here, "[a] person is guilty of criminal obstruction of breathing or blood circulation when, with intent to impede the normal breathing or circulation of the blood of another person, he or she . . . applies pressure on the throat or neck of such person" (Penal Law § 121.11 [a]). As to the assault charge, "[a] person is guilty of assault in the third degree when[,] . . . [w]ith intent to cause physical injury to another person, he [or she] causes such injury to such person or to a third person" (Penal Law § 120.00 [1]). Physical injury includes the "impairment of physical condition or substantial pain" (Penal Law § 10.00 [9]). Finally, "[a] person is guilty of unlawful imprisonment in the second degree when he [or she] restrains another person" (Penal Law § 135.05).

Here, the conflicting testimony offered by the victim and defendant presented a classic credibility issue for the jury to resolve. For her part, the victim testified that, following a verbal altercation with defendant on the morning in question, defendant threw her down on a bed in the house where he was

renting a room, told her "that he wanted [her] to die" and squeezed her neck to the point where she "couldn't breathe" and "almost pass[ed] out three times." The photographs admitted into evidence depict various marks and bruises on the victim's neck (in addition to other areas of her body), and the victim testified that "it was hard to swallow for a few days" after the attack, during which time she "couldn't move [her] head . . . at all." The victim further testified that, during the melee, which lasted roughly 90 minutes, defendant repeatedly punched, kicked and bit her and pressed his thumb into one of her eyes — resulting in various additional injuries. Finally, the victim stated that when she attempted to call for help, defendant took apart her cell phone; the victim further related that she attempted to leave the residence "a couple [of] times" but that she "kept getting dragged back in[to]" the bedroom. Eventually, the victim locked herself in a bathroom and waited for the homeowner to return, at which point she was able to summon aid.

Defendant, on the other hand, testified that the victim had a history of mental health issues, as well as a fondness for consuming alcohol, "doing pills" of various shapes and colors and engaging in rough sex. According to defendant, the physical altercation with the victim, which lasted approximately five minutes, began when he refused to engage in an "incredibly brutal" rape scenario with her, whereupon she became enraged and physically assaulted him. Although defendant could not recall the details of this encounter when initially questioned by the local police,[1] he readily admitted at trial that he punched and bit the victim in various locations — claiming that he did so in self-defense.

In our view, the victim's testimony, which clearly was credited by the jury, and the photographic evidence displaying her resulting injuries constitute legally sufficient to establish each and every element of the charged crimes (see People v

---

[1] According to one of the responding officers, when he asked defendant what had occurred, defendant indicated that he "[did] not remember what happened, but if [the victim] said he did it, he must have done it."

Carson, 126 AD3d 996, 997 [2015] [assault in the third degree];
People v Peterson, 118 AD3d 1151, 1154-1155 [2014], lvs denied 24
NY3d 1087 [2014] [strangulation in the second degree]; People v
Lotmore, 276 AD2d 901, 901-902 [2000], lv denied 96 NY2d 736
[2001] [unlawful imprisonment in the second degree]).
Additionally, while a different verdict would not have been
unreasonable, we cannot say that the jury failed to accord the
evidence the weight that it deserved (see People v Peterson, 118
AD3d at 1154-1155 [strangulation in the second degree]; People v
Cureton, 105 AD3d 1457, 1457 [2013] [unlawful imprisonment in the
second degree]; People v Perser, 67 AD3d 1048, 1049-1050 [2009],
lv denied 13 NY3d 941 [2010] [assault in the third degree]).
Accordingly, we discern no basis upon which to disturb the jury's
verdict and, for the same reasons, defendant's motion to set
aside the verdict was properly denied.

Nor are we persuaded that County Court erred with respect
to its supplemental instruction to the jury as to the definition
of intent. "Where a jury requests clarification or further
instruction, the court must direct that the jury be returned to
the courtroom and, after notice to both the People and counsel
for the defendant, and in the presence of the defendant, must
give such requested information or instruction as the court deems
proper. While the trial court is without discretion in deciding
whether to respond, the court does have discretion as to the
substance of the response — the only caveat being that the
court's response must be meaningful" (People v Briskin, 125 AD3d
1113, 1121 [2015] [internal quotation marks, brackets and
citations omitted]).

Here, in response to the jury's request for a "clear[]"
definition of the term intent, County Court discussed the jury's
inquiry with the People and counsel for defendant, indicated that
it would be expanding upon its original charge on this point and
afforded counsel an opportunity for input. County Court
thereafter responded to the jury's request with language that
mirrored the expanded charge on intent set forth in the Criminal
Jury Instructions (see CJI2d[NY] Culpable Mental States—Intent).
Inasmuch as County Court followed the proper procedure, afforded
defense counsel an opportunity to participate in formulating a
response to the jury's note, provided the jury with a meaningful

response to its inquiry and recited an accurate definition of the element at issue (see People v Cooper, 107 AD3d 1054, 1055 [2013]), we reject defendant's assertion that the manner in which County Court handled the jury's inquiry operated to deprive him of a fair trial. Defendant's remaining contentions, including his assertion that County Court disparaged defense counsel in the presence of the jury and that the sentence imposed was harsh and excessive, have been examined and found to be lacking in merit.

Peters, P.J., Garry and Lynch, JJ., concur.


ENTER:

Robert D. Mayberger
Clerk of the Court