People v Peasley (2022 NY Slip Op 05186)

People v Peasley

2022 NY Slip Op 05186

Decided on September 15, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:September 15, 2022

111075 112900
[*1]The People of the State of New York, Respondent,
v
Eric Peasley, Appellant.

Calendar Date:August 17, 2022

Before:Egan Jr., J.P., Clark, Pritzker, Reynolds Fitzgerald and McShan, JJ.

Lucas G. Mihuta, Albany, for appellant.
Andrew J. Wylie, District Attorney, Plattsburgh (Kerianne Morrissey of counsel), for respondent.

McShan, J.
Appeals (1) from a judgment of the County Court of Clinton County (William A. Favreau, J.), rendered September 20, 2018, upon a verdict convicting defendant of the crimes of aggravated criminal contempt and strangulation in the second degree, and (2) by permission, from an order of said court, entered July 1, 2021, which denied defendant's motion pursuant to CPL 440.10 to vacate that part of the judgment convicting defendant of the crime of strangulation in the second degree, without a hearing.
In February 2018, defendant was charged by indictment with, among other things, burglary in the second degree, aggravated criminal contempt and strangulation in the second degree.[FN1] The charges stemmed from allegations that defendant, in violation of an order of protection, entered the premises where the victim was located and engaged in an altercation with her, during which he strangled her and caused her to suffer a physical injury.
Following a jury trial, defendant was convicted of aggravated criminal contempt and strangulation in the second degree but acquitted on the burglary count. He was sentenced, as a second felony offender, to a prison term of 3 to 6 years on the aggravated criminal contempt conviction, and to a prison term of four years, to be followed by five years of postrelease supervision, on the strangulation in the second degree conviction. The sentences were set to run concurrently to one another, but consecutively to a prior, separate sentence that he was serving in connection with an unrelated March 2015 conviction for driving while intoxicated as a felony.[FN2] County Court also imposed $5,000 in fines.
Defendant subsequently moved to vacate that part of the judgment convicting him of strangulation in the second degree asserting that newly discovered evidence in the form of an affidavit by the victim was disclosed after entry of the judgment of conviction that would have resulted in a more favorable verdict (see CPL 440.10 [1] [g], [h]). County Court denied the motion without a hearing, finding, in pertinent part, that the victim's affidavit erroneously attempted to bifurcate the altercation that led to the strangulation into two discrete events with separate injuries, and that the victim's statements attempting to clarify the extent of injuries to her neck constituted recantation evidence that was insufficient to set aside the conviction or warrant a hearing. Defendant appeals from the judgment of conviction and, by permission, from the denial of his CPL article 440 motion.
We turn first to defendant's contention that his conviction of strangulation in the second degree is not supported by legally sufficient evidence and that the verdict is against the weight of the evidence. "In reviewing legal sufficiency, this Court must view the evidence in the light most favorable to the People and evaluate whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the [*2]jury on the basis of the evidence at trial and as a matter of law satisfy the proof and burden requirements for every element of the crime charged" (People v Watkins, 180 AD3d 1222, 1223-1224 [3d Dept 2020] [internal quotation marks and citations omitted], lv denied 35 NY3d 1030 [2020]; accord People v Harris, 206 AD3d 1454, 1455 [3d Dept 2022]; see People v Khalil, 206 AD3d 1300, 1302 [3d Dept 2022]). "In contrast, when undertaking a weight of the evidence review, this Court must first determine whether, based on all the credible evidence, a different finding would not have been unreasonable and then, if not, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v Colter, 206 AD3d 1371, 1373 [3d Dept 2022] [internal quotation marks, brackets and citations omitted]; see People v Sweet, 200 AD3d 1315, 1316 [3d Dept 2021], lv denied 38 NY3d 920 [2022]). "A weight of the evidence review further requires us to 'consider the evidence in a neutral light and defer to the jury's credibility assessments'" (People v Machia, 206 AD3d 1272, 1273 [3d Dept 2022], quoting People v Brisman, 200 AD3d 1219, 1219 [3d Dept 2021], lv denied 37 NY3d 1159 [2022]).
Defendant does not contend that his actions were legally insufficient to support a conviction of criminal obstruction of breathing or blood circulation. Rather, defendant asserts that the trial evidence failed to establish beyond a reasonable doubt that his actions caused the victim to suffer physical injuries or impairment from his obstructive act, which elevated the offense to strangulation in the second degree. As relevant here, "[a] person is guilty of criminal obstruction of breathing or blood circulation when, with intent to impede the normal breathing or circulation of the blood of another person, he or she . . . applies pressure on the throat or neck of such person[,] or . . . blocks the nose or mouth of such person," regardless of whether injury results (Penal Law § 121.11; see People v Carte, 113 AD3d 191, 193 [3d Dept 2013], lv denied 23 NY3d 1035 [2014]). In turn, "[a] person is guilty of strangulation in the second degree when he or she commits the crime of criminal obstruction of breathing or blood circulation, as defined in [Penal Law § 121.11], and thereby causes stupor, loss of consciousness for any period of time, or any other physical injury or impairment" (Penal Law § 121.12; see People v Pietoso, 168 AD3d 1276, 1277 [3d Dept 2019], lv denied 33 NY3d 1034 [2019]; People v Haardt, 129 AD3d 1322, 1323 [3d Dept 2015]).[FN3] Physical injury includes the "impairment of physical condition or substantial pain" (Penal Law § 10.00 [9]). "Substantial pain . . . must be more than slight or trivial but need not be severe or intense" (People v Johnson, 150 AD3d 1390, 1392 [3d Dept 2017] [internal quotation marks and citations omitted], [*3]lv denied 29 NY3d 1128 [2017]; see People v Chiddick, 8 NY3d 445, 447 [2007]; People v Whiten, 187 AD3d 1661, 1661 [4th Dept 2020]), and the determination of whether pain is substantial considers "the objective nature of the injury, the victim's subjective experience and whether the victim sought medical treatment" (People v Parker, 127 AD3d 1425, 1427 [3d Dept 2015] [internal quotation marks and citations omitted]; see People v Chiddick, 8 NY3d at 447).
The trial testimony established that the victim and defendant had dated for two years prior to the altercation, at which time defendant was prohibited from communicating with her pursuant to an order of protection. On the day of the altercation, the victim was in the backyard of her sister's home when defendant entered without permission. The victim observed that defendant was inebriated and asked him to leave. Defendant initially obliged that request, only to return several minutes later with a bottle of champagne, proposing that he and the victim celebrate their anniversary. The victim told defendant that he should stop drinking, took the bottle from his hands and threw it across the yard. Angered by the victim's response, defendant grabbed her and threw her to the ground face down. Defendant then sat on top of her, put his hands on the back of her neck, pulled the back of her shirt over her face and "pulled up on [her] neck" which caused her to briefly lose her ability to breath. After a brief struggle, defendant momentarily paused his attack, which provided an opportunity for the victim to free herself, run into her sister's home and contact the police.
The victim testified that, as a result of the altercation, she sustained a broken pinky finger and damage to the cartilage in her nose that caused her pain for weeks. She also suffered bruising on her arms and neck, the latter of which resulted in "significant" pain resembling "whiplash" that lasted a couple of days. The victim sought treatment at an emergency room the following day, where she "got a splint for [her] pinky" and was prescribed over-the-counter pain relievers. One of the police officers that had responded to the altercation testified that the victim had recounted to him that, during the argument, defendant "grabbed her by [the] neck" and "threw her to the ground, at which point she had landed on her stomach" and then "lifted her shirt . . . over her neck and began squeezing it to the point where she was gasping for air and . . . couldn't breathe." That officer also observed that the victim had "ligature marks" on each side of her neck as well as "a hurt pinky finger."
We find that there is legally sufficient evidence supporting defendant's conviction for strangulation in the second degree. Viewed in the light most favorable to the People, the injuries to the victim's neck and nose, which were established by the victim's and the officer's testimony, could reasonably be attributed to defendant's act of pulling the victim's shirt [*4]around her neck and over her face (see People v Mooney, 174 AD3d 922, 923 [2d Dept 2019], lv denied 34 NY3d 982 [2019]; People v Ryder, 146 AD3d 1022, 1025 [3d Dept 2017], lv denied 29 NY3d 1086 [2017]; People v Haardt, 129 AD3d at 1323-1324). Considering the evidence of those injuries and the reasonable inference as to their cause, the fact that the trial evidence did not establish that the victim's broken finger resulted from defendant's obstructive act does not affect our determination (see People v Carte, 113 AD3d at 194; compare People v Abughanem, 203 AD3d 1710, 1711-1713 [4th Dept 2022], lv denied 38 NY3d 1031 [2022]). As to the weight of the evidence, while the jury may have considered the victim's broken pinky as part of its determination of guilt, the record does not establish that it was the sole injury that resulted from the altercation, as the victim's testimony concerning the pain she incurred to her neck and nose would also support the jury's determination as to that element (see People v Haardt, 129 AD3d at 1323; People v Carte, 113 AD3d at 194).[FN4] To this end, while we find that a different determination would not have been unreasonable, considering the sum of the evidence presented and accounting for the jury's assessment of the witnesses' credibility, we find that the verdict is not against the weight of the evidence (see People v Cox, 129 AD3d 1210, 1212 [3d Dept 2015], lv denied 26 NY3d 966 [2015]; see also People v Manigault, 150 AD3d 1331, 1333 [3d Dept 2017], lv denied 29 NY3d 1130 [2017]; People v Parker, 127 AD3d at 1427).
Defendant next challenges County Court's denial of his motion to set aside the verdict based upon newly discovered evidence (see CPL 440.10 [g]). "It is well settled that on a motion to vacate a judgment of conviction based on newly discovered evidence, the movant must establish, [among other things], that there is newly discovered evidence: (1) which will probably change the result if a new trial is granted; (2) which was discovered since the trial; (3) which could not have been discovered prior to trial; (4) which is material; (5) which is not cumulative; and (6) which does not merely impeach or contradict the record evidence" (People v Smith, 108 AD3d 1075, 1076 [4th Dept 2013] [internal quotation marks, brackets and citation omitted], lv denied 21 NY3d 1077 [2013]; see People v Salemi, 309 NY 208, 215-216 [1955], cert denied 350 US 950 [1956]; People v Nelson, 171 AD3d 1251, 1252-1253 [3d Dept 2019], lv denied 36 NY3d 1058 [2021]). Defendant's contention rests upon statements in the victim's affidavit that purportedly seek to clarify her trial testimony concerning the nature and cause of the injuries she suffered during the altercation with defendant. However, while the victim's affidavit provides certain information that could be characterized as clarification as to the cause of the injuries to her nose and finger, the statements in her affidavit that are dispositive to this appeal clearly seek to [*5]recant her testimony concerning the severity of the injuries to her neck. In the context of recantation evidence, which "is inherently unreliable" (People v Stanton, 200 AD3d 1307, 1312 [3d Dept 2021] [internal quotation marks and citation omitted], lv denied 38 NY3d 954 [2022]), "the defendant bears the burden of rebutting the presumption of regularity that attached to the prior judicial proceeding by producing substantial evidence that the recanting witness's prior testimony was false" (People v Stetin, 192 AD3d 1331, 1333 [3d Dept 2021] [internal quotation marks and citation omitted]; see People v Williams, 11 AD3d 810, 812 [3d Dept 2004], lv denied 4 NY3d 769 [2005]). "Thus, in assessing the credibility of recantation testimony, courts consider a variety of factors, including '(1) the inherent believability of the substance of the recanting testimony; (2) the witness's demeanor both at trial and at the evidentiary hearing; (3) the existence of evidence corroborating the trial testimony; (4) the reasons offered for both the trial testimony and the recantation; (5) the importance of facts established at trial as reaffirmed in the recantation; and (6) the relationship between the witness and [the] defendant as related to a motive to lie'" (People v Nelson, 171 AD3d at 1253 [citations omitted], quoting People v Wong, 11 AD3d 724, 725-726 [3d Dept 2004]).
Based upon our review of the evidence produced at trial in comparison to the victim's affidavit, we find that County Court properly denied defendant's motion to vacate the judgment. The statements provided by the victim in her affidavit, which was submitted more than three years after the altercation and two years after defendant's trial, directly contradict her testimony at trial when she clearly testified to the significant nature of the pain she incurred to her neck, the feeling of "whiplash" that she endured as well as the bruising to her neck as a result of defendant's obstructive act. Moreover, the victim's suggestion that her prior testimony was attributable to her failure to appreciate the implication of the words she used is inherently unbelievable, as the explanation she provides in her affidavit concerning her injuries is directly contradicted by the testimony she provided at trial when she was unequivocal in describing the severity of the injuries she suffered to her neck (see People v Avery, 80 AD3d 982, 985 [3d Dept 2011], lv denied 17 NY3d 791 [2011]; see also People v Howard, 175 AD3d 1023, 1024 [4th Dept 2019]). Said differently, her testimony at trial does not reflect any indication that there was some misunderstanding concerning the significance of her injuries, and the recantation she presents now serves only to impeach and contradict her former testimony (see People v Thibodeau, 267 AD2d 952, 953 [4th Dept 1999], lv denied 95 NY2d 805 [2000]; see also People v Smith, 108 AD3d at 1077). Thus, we find that the victim's subsequent recantation did not present newly discovered evidence [*6]sufficient to warrant relief pursuant to CPL 440.10 (1) (g) (see People v Pringle, 155 AD3d 1660, 1660-1661 [4th Dept 2017], lv denied 31 NY3d 986 [2018]; People v Davidson, 150 AD3d 1142, 1145 [2d Dept 2017], lv denied 30 NY3d 1018 [2017]; People v Larock, 139 AD3d 1241, 1243-1244 [3d Dept 2016], lv denied 28 NY3d 932 [2016]; People v Smith, 108 AD3d at 1077). Moreover, we find no abuse of discretion in County Court's denial of defendant's motion without a hearing (see CPL 440.30 [4] [d]; People v Cassels, 260 AD2d 392, 393 [2d Dept 1999], lv denied 93 NY2d 1043 [1999]; compare People v Stetin, 192 AD3d at 1334-1335; People v Martinez, 126 AD3d 1350, 1351 [4th Dept 2015]).
Finally, we reject defendant's challenge to the severity of his sentence and the accompanying fines.[FN5] County Court had the discretion to run the sentences consecutive to the sentence on defendant's March 2015 conviction (see Penal Law § 70.25) and, as a second felony offender, his sentences for aggravated criminal contempt and strangulation in the second degree were below the maximum of the allowable sentencing ranges (see Penal Law § 70.06 [3] [d]; [4] [b]; [6] [c]). Considering the violent nature of defendant's crimes and his lengthy criminal history, we do not find his sentence unduly harsh or excessive and decline to disturb it (see People v Blackmon, 207 AD3d 962, 962-963 [3d Dept 2022]; People v Minaya, 206 AD3d 1161, 1163 [3d Dept 2022]; People v Jackson, 203 AD3d 1388, 1389-1390 [3d Dept 2022], lv denied 38 NY3d 1134 [2022]; People v Rivera, 195 AD3d 1249, 1249-1250 [3d Dept 2021]). As to the $5,000 in fines imposed on him at sentencing, defendant failed to object at that time and his contention is therefore unpreserved and, in any event, without merit (see People v Hernandez, 140 AD3d 1521, 1523 [3d Dept 2016], lv denied 28 NY3d 971 [2016]; People v Wingo, 103 AD3d 1036, 1037 [3d Dept 2013], lv denied 21 NY3d 1021 [2013]).
Egan Jr., J.P., Clark, Pritzker and Reynolds Fitzgerald, JJ., concur.
ORDERED that the judgment and order are affirmed.

Footnotes

Footnote 1: Prior to commencing trial, County Court determined that the evidence supporting count 4 of the indictment charging defendant with criminal possession of a weapon in the third degree was legally insufficient and dismissed the charge.
Footnote 2: Due to this incident, County Court revoked defendant's probation that was imposed for the March 2015 conviction and sentenced him to a prison term of 1 to 3 years; we affirmed on appeal (People v Peasley, 184 AD3d 911, 912 [3d Dept 2020], lv denied 35 NY3d 1069 [2020]).

Footnote 3: County Court determined that the record contained no evidence that defendant's conduct caused stupor or a loss of consciousness. Accordingly, the sole issue before us is whether defendant's actions caused the victim to suffer some physical injury or impairment (see People v Carte, 113 AD3d at 193; People v White, 100 AD3d 1397, 1399 [4th Dept 2012]).

Footnote 4: Notably, the injury to the victim's finger was relevant to defendant's conviction for aggravated criminal contempt, which required the People to demonstrate that defendant violated an order of protection by "intentionally or recklessly caus[ing] physical injury or serious physical injury to a person for whose protection such order was issued" (Penal Law § 215.52 [1]).

Footnote 5: Although defendant was paroled in November 2021, his challenge to his sentence is not moot, as he remains under the supervision of the Board of Parole until his sentence is complete (see People v Winters, 196 AD3d 847, 850 [3d Dept 2021], lv denied 37 NY3d 1030 [2021]).