Matter of Angel ZZ. (2023 NY Slip Op 05300)

Matter of Angel ZZ.

2023 NY Slip Op 05300

Decided on October 19, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:October 19, 2023

CV-22-2282
[*1]In the Matter of Angel ZZ., Alleged to be a Juvenile Delinquent. Tompkins County Attorney, Respondent; Angel ZZ., Appellant.

Calendar Date:September 6, 2023

Before:Clark, J.P., Aarons, Reynolds Fitzgerald, Ceresia and Fisher, JJ.

Citizens for Concerned Children, Inc., Ithaca (Thomas G. Shannan of counsel), for appellant.
Holly L. Mosher, Acting County Attorney, Ithaca, for respondent.

Ceresia, J.
Appeal from an order of the Family Court of Tompkins County (Scott A. Miller, J.), entered August 16, 2022, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 3, to adjudicate respondent a juvenile delinquent.
Petitioner commenced this juvenile delinquency proceeding against respondent (born in 2008) based upon allegations that she choked the 12-year-old victim during lunch at their middle school. Following a fact-finding hearing, Family Court found that respondent had committed acts that, if committed by an adult, would constitute the crimes of criminal obstruction of breathing or blood circulation and assault in the third degree.[FN1] At the conclusion of the dispositional hearing that followed, Family Court adjudicated respondent a juvenile delinquent and placed her on probation for a period of one year, subject to various terms and conditions, and entered an order of protection in favor of the victim. This appeal by respondent ensued.
Respondent initially contends that Family Court's determination is not supported by legally sufficient evidence and is against the weight of the evidence. Although the legal sufficiency challenge is unpreserved for this Court's review, as respondent neglected to raise any objection in this regard before Family Court (see Matter of Kylik C., 179 AD3d 1057, 1058 [2d Dept 2020]; Matter of Gordon B., 83 AD3d 1164, 1166 [3d Dept 2011], lv denied 17 NY3d 710 [2011]), we nevertheless evaluate the proof supporting each element of the pertinent crimes in the course of our weight of the evidence analysis. As to the weight of the evidence, "where a different determination would not have been unreasonable, we view the evidence in a neutral light while according deference to the credibility determinations of Family Court" (Matter of Daniel B., 129 AD3d 1152, 1153 [3d Dept 2015] [internal quotation marks and citations omitted], lv denied 25 NY3d 914 [2015]).
The victim testified that, on the day in question, she was walking down a school hallway when respondent grabbed her by the hair and backpack, "twirl[ed] [her] around in a circle and . . . threw [her] into [respondent's] friend group." Later that day, as the victim was sitting on a bench eating lunch, respondent came up behind the victim, crossed her arms around the victim's neck and throat, applied pressure, dug her elbows into the victim's collarbones, "dragged" the victim off of the bench and "dropped [her] on the ground." As respondent was doing this, the victim testified, respondent said, "go to sleep." According to the victim, this incident lasted between 15 and 20 seconds, during which she could not breathe, was "gasping for air" and experienced pain at a level of 5 on a scale of 1 to 10. The victim went to the school nurse and obtained ice for her injuries, telling the nurse that she had fallen in front of the school, and sought treatment at a local hospital later that same day. Although her pain diminished in the days that followed[*2], and it appears that the victim's ensuing absences from school were occasioned not by any physical limitations but by her fear of respondent, the victim also testified that, following the attack, she was unable to lift her arms above her shoulders "for a few days." The victim acknowledged that she regarded the incident in the hallway as respondent just joking around, but she also testified that she had experienced problems with respondent in the past, that respondent had told her and others that respondent did not like her and that it felt like respondent was trying to hurt her during the choking incident.
With respect to the charge of criminal obstruction of breathing or blood circulation, a person is guilty of this crime "when, with intent to impede the normal breathing or circulation of the blood of another person, he or she . . . applies pressure on the throat or neck of such person" (Penal Law § 121.11 [a]; see People v Peasley, 208 AD3d 1466, 1468 [3d Dept 2022], lv denied 39 NY3d 1074 [2023]). Respondent contends that proof of intent is lacking. "Intent to impede a victim's breathing may be inferred from the perpetrator's actions and the surrounding circumstances" (Matter of Jesse Z., 116 AD3d 1105, 1106 [3d Dept 2014] [citations omitted]; see People v Stines, 212 AD3d 883, 885 [3d Dept 2023], lv denied 39 NY3d 1113 [2023]; see generally People v Stover, 174 AD3d 1150, 1151 [3d Dept 2019], lv denied 34 NY3d 954 [2019]). In light of the hearing evidence demonstrating that respondent choked the victim while simultaneously dragging her to the ground and telling her to "go to sleep," and deferring to the credibility determinations of Family Court — which found the victim "entirely credible" — we are satisfied that the finding of intent is supported by the weight of the evidence. To the extent that respondent notes certain alleged inconsistencies in the victim's testimony, such as when the victim experienced dizziness, how the victim could claim to have yelled for help when she said that she was unable to breathe or whether she spoke with the school principal following the incident, "we have long recognized that it is not uncommon for young children to be uncertain and even inconsistent in their . . . testimony[, and] . . . we cannot say that [the victim's] trial testimony was utterly incredible or inherently unbelievable" (People v Beauharnois, 64 AD3d 996, 998-999 [3d Dept 2009] [internal quotation marks and citations omitted], lv denied 13 NY3d 834 [2009]; see People v Fernandez, 106 AD3d 1281, 1283-1284 [3d Dept 2013], affd 17 NY3d 70 [2011]).
As for the charge of assault in the third degree, a person is guilty of this crime "when[,] . . . [w]ith intent to cause physical injury to another person, he [or she] causes such injury to such person" (Penal Law § 120.00 [1]; see People v Bryant, 200 AD3d 1483, 1484-1485 [3d Dept 2021], appeal dismissed 38 NY3d 1158 [2022]). In respondent's estimation, the proof of physical injury is deficient. Physical [*3]injury is defined as "impairment of physical condition or substantial pain" (Penal Law § 10.00 [9]; accord People v Jones, 206 AD3d 1292, 1293 [3d Dept 2022]). "To meet the statutory threshold, the pain must be more than slight or trivial but need not be severe or intense" (People v Conklin, 158 AD3d 973, 974 [3d Dept 2018] [internal quotation marks and citations omitted], lv denied 31 NY3d 1080 [2018]; see People v Peasley, 208 AD3d at 1468-1469). "A variety of factors are relevant in determining whether physical injury has been established, including the injury viewed objectively, the victim's subjective description of the injury and his or her pain, and whether the victim sought medical treatment" (People v Conklin, 158 AD3d at 974 [internal quotation marks, brackets and citations omitted]; see People v Peasley, 208 AD3d at 1469; People v Jones, 206 AD3d at 1293). Furthermore, "[w]hether the substantial pain necessary to establish an assault charge has been proved is generally a question for the trier of fact" (People v Jones, 206 AD3d at 1293 [internal quotation marks and citations omitted]). Considering the victim's testimony that she felt pain at a level 5 on a scale of 1 to 10, sought treatment at the school nurse's office and a hospital and could not fully lift her arms for a few days after the incident (compare People v Rios, 142 AD3d 28, 29-30 [1st Dept 2016]; People v Young, 99 AD3d 739, 740 [2d Dept 2012], lv denied 20 NY3d 1015 [2013]), Family Court's finding that the victim sustained a physical injury is in accord with the weight of the evidence (see People v Peasley, 208 AD3d at 1469-1470; People v Bryant, 200 AD3d at 1485-1486; People v Conklin, 158 AD3d at 975).[FN2]
Respondent also claims that Family Court erred when it allowed petitioner to introduce certain evidence — that the victim could not breathe and that respondent told her to "go to sleep" — which was not included in the petition or the bill of particulars, thereby altering the theory of petitioner's case. By failing to lodge any objection to the admission of this evidence, respondent neglected to preserve this issue for appellate review (see Matter of Ayesha FF. v Evelyn EE., 160 AD3d 1068, 1070 [3d Dept 2018], lv dismissed & denied 31 NY3d 1131 [2018]; People v Osborne, 63 AD3d 1707, 1708 [4th Dept 2009], lv denied 13 NY3d 748 [2009]). In any event, the challenged evidence did not change the theory of petitioner's case but, instead, constituted "matters of evidence relating to how [petitioner] intend[ed] to prove the elements of the offense[s] charged," which were not required to be included in the bill of particulars (Family Ct Act § 330.1 [1] [a]; see Matter of Bernell J., 217 AD2d 659, 659 [2d Dept 1995]).
Clark, J.P., Aarons, Reynolds Fitzgerald and Fisher, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: Family Court dismissed an additional count of assault in the third degree.

Footnote 2: We are mindful that petitioner conceded at the close of the fact-finding hearing that the element of physical injury had not been satisfied. A court, however, is not bound by the erroneous concession of a legal principle (see People v Diviesti, 101 AD3d 1163, 1164 n [3d Dept 2012], lv denied 20 NY3d 1097 [2013]; see e.g. People v Morrison, 179 AD3d 1454, 1455 [4th Dept 2020], lv denied 35 NY3d 972 [2020]; People v Adair, 177 AD3d 1357, 1357 [4th Dept 2019], lv denied 34 NY3d 1125 [2020]).